UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RASHAUN BELL,
       Plaintiff,

-v-

KISHANNA DRAKEFORD, *et al.*,
       Defendants.

18-CV-2225 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  Plaintiff Rashaun Bell brings this action against Defendants Lieutenant Kishanna Drakeford,[1] Officer George Bouknight, Officer Sean Seaboroughs, and Officer Jarmel Gilchrist (collectively, "Defendants"), under 42 U.S.C. § 1983 alleging various violations of his constitutional rights. (Dkt. No. 30 ("Compl.").) Defendants have moved to dismiss the operative complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 45.) For the reasons that follow, the motion is granted.

**I. Background**

  The following facts are taken from the operative complaint and are assumed true for purposes of this motion to dismiss.

  On May 5, 2016, Plaintiff Rashaun Bell was stopped by Defendant Lieutenant Kishanna Drakeford one block away from the Bowery Residence Committee Chemical Dependency Crisis Center ("BRC"). (*See* Compl. ¶ 2; Dkt. No. 48 at 2.) Lieutenant Drakeford told him she needed to speak with him and asked him to wait for her. (Compl. ¶¶ 2–3.) When Bell began to walk away, Lieutenant Drakeford grabbed him and insisted that he wait. (Compl. ¶ 3.) Bell pulled

---

[1] Drakeford was named in the complaint as "Sergeant Kishanna Drakeford." (Dkt. No. 48 at 1.)

1

away from her as Defendants Officer Sean Seaboroughs and Officer Jarmel Gilchrist approached. (Compl. ¶ 4.) Either Officer Seaboroughs or Officer Gilchrist "got in [his] face" and pushed him. (*Id.*)

Lieutenant Drakeford stated that she thought "[Bell was] the other person involved" in the incident they were investigating. (*Id.*) Subsequently, Officer Seaboroughs said, "Grab that fucking boy." (Compl. ¶ 5.) Bell alleges that the officers "us[ed] excessive force against" him and dragged him into the basement of the BRC. (*Id.*) While still "using excessive force against" him, Officer Seaboroughs handcuffed Bell. (Compl. ¶ 6.) Bell was forced down while handcuffed, which was "painful and uncomfortable because [he] was unable to twist and turn [his] upper body or move." (Compl. ¶ 7.) Lieutenant Drakeford told him that if he had waited for her this would not have happened and laughed while telling him that he was going to jail. (Compl. ¶ 8.) He asked why he was going to jail, and she said that she would let him know and she was "still trying to sort things out." (*Id.*)

Officer George Bouknight began to search Bell and removed all the property from his pockets. (Compl. ¶ 9.) When Bell inquired where his property was, he was told that he had to come back to BRC to get it. (*Id.*) Lieutenant Drakeford then informed him that he was going to jail for assault, an assault which Bell denied that he committed. (Compl. ¶ 10.) Bell informed officers that his bladder was hurting him because he needed to use the restroom, that he was hungry, and that his handcuffs were too tight. (Compl. ¶ 11.) Lieutenant Drakeford told him that he could either urinate on himself or use the bathroom when they arrived at the 13th precinct. (*Id.*)

Hours later, Bell was transported to Bellevue Hospital. (Compl. ¶ 12.) When he arrived, he asked Officer Gilchrist to loosen his handcuffs because they hurt, and he needed to use the

bathroom. (*Id.*) An unnamed officer loosened the handcuffs and saw that Bell's hands were blue from lack of circulation. (*Id.*) Officer Gilchrist informed Officer Bouknight of that fact, and Officer Bouknight in turn told Bell: "[I]f you tell the doctors that your hands are in pain, they will keep you here all day. I know you want to go home and not be here all day so just relax, have a cigarette, [and] we will be done soon." (Compl. ¶ 13.)

Subsequently, Bell was transported to the 13th precinct where he was placed in a holding cell and fell asleep. (Compl. ¶ 14.) When he woke up, he asked Officer Bouknight for something to eat. (*Id.*) Officer Bouknight ultimately gave him chips and a soda. (*Id.*) Bell was charged with various assault and harassment counts. (Dkt. No. 47-3.) He was indicted by a grand jury on two criminal contempt counts (Dkt. No. 47-4) and convicted after a trial on one criminal contempt count (Dkt. No. 47-2).

Bell filed the operative complaint on January 22, 2019. (*See* Compl.) Defendants moved to dismiss the complaint on May 10, 2019. (Dkt. No. 45.) This Court granted Bell three extensions of time to file an opposition to Defendants' motion to dismiss. (Dkt. Nos. 53, 56, 58.) In this Court's final extension order, Bell was warned that Defendants' motion to dismiss may be considered unopposed if he failed to file an opposition. (Dkt. No. 58.) Because Bell has not filed an opposition to date, and because Bell has not communicated with the Court since July 15, 2019 (*see* Dkt. No. 54), this Court ordered that Defendants' motion to dismiss would indeed be considered unopposed on October 1, 2019. (Dkt. No. 60.)

## II. Legal Standard

"[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000). Accordingly, the district court must determine

whether dismissal is appropriate on the merits, as "the plaintiff's failure to respond . . . does not warrant dismissal." *Id.* at 323.

Dismissal under Rule 12(b)(6) is proper when a complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (alteration and internal quotation marks omitted) (quoting *McCall*, 232 F.3d at 322); *see Blanc v. Capital One Bank*, No. 13 Civ. 7209, 2015 WL 3919409, at *2–3 (S.D.N.Y. June 24, 2015). "A document filed *pro se*," like the complaint here, "is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (Sotomayor, J.) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Nonetheless, even *a pro se* complaint must contain "factual allegations sufficient to raise a right to relief above the speculative level," including "an allegation regarding [each] element necessary to obtain relief." *Blanc*, 2015 WL 3919409, at *2 (internal quotation marks and citation omitted).

## III. Discussion

### A. False Arrest

Bell asserts an "unlawful arrest" claim, which this Court construes as a claim for false arrest. (Compl. at 9.) To make out a claim of false arrest under the Fourth Amendment, Bell must show that the arrest was made "without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Accordingly, his false-arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

4

would, the complaint must be dismissed." *Id.* at 487.  In other words, a "conviction establishe[s] probable cause for the arrest as a matter of law." *McLaurin v. New Rochelle Police Officers*, 439 F. App'x 38, 39 (2d Cir. 2011) (summary order).

Bell was arrested and charged with Assault in the Third Degree, N.Y. Penal Law § 120.00(1); Assault in the Third Degree, N.Y. Penal Law § 120.00(2); Aggravated Harassment in the Second Degree, N.Y. Penal Law § 240.30(4); Attempted Assault in the Third Degree, N.Y. Penal Law § 110/120.00(1); and Harassment in the Second Degree, N.Y. Penal Law § 240.26(1). (Dkt. No. 47-3.)[2]  Ultimately, he was indicted by a grand jury on two counts of Criminal Contempt in the First Degree, N.Y. Penal Law § 215.51 (Dkt. No. 47-4),[3] and convicted of one count of Criminal Contempt in the First Degree after trial (Dkt. No. 47-2).[4]  As a result of his conviction, he was sentenced to a term of imprisonment of 16 months to 4 years.  (*Id.*)

Because Bell was ultimately convicted following his arrest, he cannot show that there lacked probable cause for his arrest.  It is irrelevant that he was convicted of a lesser offense than that with which he was originally charged.  *Cf. Timmins v. Toto*, 91 F. App'x 165, 166 (2d Cir. 2004) (summary order) ("[I]n this Circuit, a plaintiff cannot establish any [false arrest] claim if he pleads guilty to a lesser offense."); *Hernandez v. City of New York*, No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004) ("Since a guilty plea is the equivalent of a

---

[2] On a motion to dismiss, "consideration is limited to the factual allegations in plaintiff['s] . . . complaint . . . [and] to matters of which judicial notice may be taken," *Brass v. Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993), which include matters of "public record," *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).  Here, the Court finds it appropriate to take judicial notice of the record of Bell's criminal complaint.

[3] The Court finds it appropriate to take judicial notice of Bell's indictment.  *See supra* note 2.

[4] The Court finds it appropriate to take judicial notice of Bell's conviction.  *See supra* note 2.

5

conviction, a guilty plea will also bar a § 1983 false arrest claim." (citations omitted)). Because Bell was ultimately convicted following his arrest, his false arrest claims must fail. Accordingly, Bell's false arrest claims are dismissed.

### B. Unreasonable Search & Seizure Claims

Bell also asserts an unreasonable search and seizure claim based on the search of his person during his arrest. (*See* Compl. at 6.) "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). And a "search of Plaintiff's pockets incident to his arrest [is] permissible under the Fourth Amendment." *Ferebee v. City of New York*, No. 15 Civ. 1868, 2017 WL 2930587, at *9 (S.D.N.Y. July 6, 2017). Bell's arrest was based on probable cause as a matter of law, *see supra* Section III.A, and he alleges only that his pockets were searched (*See* Compl. ¶ 9). Accordingly, his unreasonable search and seizure claims are dismissed.

### C. Denial of the Right to a Fair Trial

In his complaint, Bell asserts that his "[d]ue [p]rocess [r]ights were violated . . . based on false and fraudulent information." (Compl. at 6.) The Court construes this as a claim for the denial of the right to a fair trial. To establish a denial of the right to a fair trial, a plaintiff must show that "an (1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). However, Bell has not pleaded any facts to support such a claim. He only alleges that his arrest was based on "false and fraudulent information" (Compl. at 6), and that he told officers that he did not commit the assault of which he was accused (Compl. ¶ 10). Because these allegations are far too conclusory "to raise a right to relief above the

speculative level," *Blanc*, 2015 WL 3919409, at *2 (citation omitted), Bell's denial of the right to a fair trial claim is dismissed.

> D.   **Excessive Force**

Bell asserts an excessive force claim against the officers involved in his arrest. (Compl. at 6.) "Officers are entitled to use some degree of force when restraining a suspect during an arrest." *Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013) (summary order). "Determining whether the force used to effect a particular seizure is reasonable . . . requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). Bell alleges that after

> Officer Seaboroughs said to[] "Grab that fucking boy[,]" [Lieutenant] Drakeford, Officer Seaboroughs, and Officer John Doe . . . us[ed] excessive force against [him]. All of the officers involved, Sergeant Drakeford, Officer Seaboroughs, [and] Officer John Doe, forced [him] up the block to BRC and they dragged [him] down to the basement of BRC. At this time, the officers . . . still us[ed] excessive force against [him].

(Compl. ¶¶ 5–6.) However, Bell must allege facts that support his excessive force claim rather than simply state that excessive force was used in a conclusory manner. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) (noting that "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss (citation omitted)). Accordingly, all excessive force claims based on this conduct must be dismissed.

Bell also alleges that Lieutenant Drakeford grabbed him, and either Officer Seaboroughs or Officer Gilchrist "got in [his] face" and pushed him. (Compl. ¶¶ 3–4.) However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). Because a plaintiff "must . . . establish that the alleged use of force is objectively

7

sufficiently serious or harmful enough to be actionable," *Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012) (citation omitted), Bell's allegations are insufficient to state an excessive force claim. To the extent that his excessive force claims are based on this conduct, they are dismissed.

Bell does more explicitly assert an excessive force claim based on unreasonably tight handcuffing. "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (alteration in original) (citation and emphasis omitted). "There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Id.*

Here, Bell pleads that his handcuffs were too tight, and that at least when he initially complained, the officers laughed and ignored him. (Compl. ¶ 11.) He asked again, and when Officer John Doe loosened the handcuffs, Officer Doe saw that Bell's hands were blue because the handcuffs were so tight that they cut off his circulation. (Compl. ¶ 12.) While Bell has adequately alleged the first and second prong, he has failed to adequately allege the degree of injury to the wrists necessary to sustain an unreasonable handcuffing excessive force claim. *See Livigni v. Ortega*, No. 15 Civ. 9454, 2016 WL 6143351, at *4 (S.D.N.Y. Oct. 19, 2016) (finding that loss of circulation and the conclusory allegation that the plaintiff's wrists were "chronically debilitated" insufficient to adequately allege the requisite injury to the wrists). Accordingly, Bell's excessive force claim based on unreasonable handcuffing is dismissed.

### E. Deliberate Indifference Claim

Bell alleges that he was denied food and use of the bathroom after his arrest. (Compl. ¶¶ 11–12.) He asserts that his Eighth Amendment rights were violated. (Compl. at 6.) However, "the cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply" to a pre-trial detainee such as Bell, because he is "not being punished." *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citation omitted). Accordingly, any Eighth Amendment claims must be dismissed. "Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the . . . Due Process Clause of the Fourteenth Amendment if held in state custody." *Id.* The Court construes Bell's claim as a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment.

To establish a due process deliberate indifference claim,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health and safety.

*Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017). Here, Plaintiff alleges that he told Lieutenant Drakeford that he was hungry and that his "bladder was hurting [him]" because he needed to use the bathroom. (Compl. ¶ 11.) Lieutenant Drakeford apparently told him that he could urinate on himself and informed him that he could use the bathroom when he got to the 13th precinct. (*Id.*) Once he arrived, Officer Bouknight gave him chips and a soda. (Compl. ¶ 14.) Bell does not allege when he was allowed to use the bathroom, or how long it took for him to get to the 13th precinct.

Depriving a pre-trial detainee of "food . . . for a significant period of time" can constitute a violation of the Fourteenth Amendment. *Simmons v. Kelly*, No. 06 Civ. 6183, 2009 WL 857410, at *8 (S.D.N.Y. Mar. 31, 2009). Bell notes that it was "hours later" when he got to Bellevue Hospital, and he did not go to the 13th precinct until after he left Bellevue. (*See* Compl. ¶¶ 12–14.) But because Bell does not specifically allege how many "hours later" it took for him ultimately get food, he has not adequately alleged that the denial of food was posed an excessive risk to his health. In a similar vein, it is not clear when Bell was ultimately able to use the bathroom. Therefore, the allegations are insufficient to permit the Court to assess whether there existed any excessive risk to health and safety. Accordingly, Bell's deliberate indifference claims must be dismissed.

### F. First Amendment Claim

Bell asserts that his First Amendment rights were violated. The Court construes this as a retaliatory arrest claim. To establish a First Amendment retaliatory arrest claim, "a plaintiff must plausibly allege that (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated by or substantially caused by the exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *McKeefry v. Town of Bedford*, No. 18 Civ. 10386, 2019 WL 6498312, at *10 (S.D.N.Y. Dec. 2, 2019) (internal quotation marks and citation omitted). Critically, the Supreme Court has held that where officers have probable cause to arrest, a plaintiff's "retaliatory arrest claim fails as a matter of law" except where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727–28 (2019). Here, Bell's conviction is conclusive evidence that the officers had probable cause to arrest him. *See supra* Section III.A. And he has not alleged that he engaged in any form of protected speech, much less alleged facts

that he was arrested where other similarly situated individuals had not been. Accordingly, any First Amendment claims must be dismissed.

### G. *Miranda* Claims

Bell alleges that the officers failed to read him his *Miranda* rights. (Compl. at 6.) However, "[t]he remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements . . . . The remedy is not a § 1983 action." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam). Accordingly, any claim based on an alleged failure to read Bell his *Miranda* rights is dismissed.

### H. State-Law Claims

Defendants do not explicitly move to dismiss Bell's unidentified state-law claims. However, to the extent that they exist, the Court declines to exercise supplemental jurisdiction. This Court "may decline to exercise supplemental jurisdiction over a claim if . . . [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because all of Bell's federal-law claims have been dismissed, all state-law claims are also dismissed.

### I. Leave to Amend the Complaint

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). But leave should be denied if repleading would be "futile." *Id.*

Bell is granted leave to amend his complaint with respect to his denial of the right to a fair trial, excessive force, Fourteenth Amendment deliberate indifference, and state-law claims.

11

However, he is denied leave to amend his false arrest, unreasonable search and seizure, *Miranda,* or any First or Eighth Amendment claims as leave to amend would be futile.

Bell is directed to file an amended complaint within sixty days of the date of this Opinion and Order that addresses the deficiencies identified above. The new amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain all of the claims and factual allegations Bell wishes the Court to consider, including the specific actions or omissions of each Defendant that violated Bell's constitutional rights. If Bell fails to abide by the sixty-day deadline, this action will be dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

Plaintiff is granted leave to amend, provided that he does so within sixty days of the date of this Opinion and Order. If no amended complaint is filed by that date, this action will be dismissed with prejudice.

The Clerk of Court is directed to close the motions at Docket Number 45.

Counsel for Defendants are directed to mail a copy of this Opinion and Order to Plaintiff within seven days, and to provide proof of such mailing on the docket.

SO ORDERED.

Dated: April 10, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge